UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JULIE B.,<br><br>      Plaintiff,<br>v.<br><br>ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Case No. 3:22-CV-05912<br><br>ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS |

BACKGROUND

  Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of defendant's denial of plaintiff's application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was not disabled. Dkt. 4, Complaint.

  Plaintiff filed her applications for SSI and DIB benefits on July 10, 2019. AR 21. She alleged the date of onset was April 3, 2018. *Id.* The applications were denied, and plaintiff appealed; the ALJ held a hearing on August 4, 2021, by phone. AR 38-71. Plaintiff was not represented by counsel during the ALJ hearing but was assisted by a non-attorney representative. AR 388-398. The ALJ published a decision on August 31, 2021, finding that plaintiff was not disabled. AR 21-32.

The ALJ determined that plaintiff had the following severe impairments: "morbid obesity; left shoulder adhesive capsulitis; generalized anxiety disorder; post-traumatic stress disorder (PTSD); and persistent depressive disorder." AR 24. At step four, the ALJ found plaintiff had the following residual functional capacity (RFC): "she could perform light work, with the following limitations – "frequently climb ramps and stairs, but never climb ropes, ladders, or scaffolds; occasionally balance, stoop, crouch, and kneel, but never crawl; occasionally reach overhead with the left upper extremity; frequently reach laterally and in front with the left upper extremity; frequently handle with the left upper extremity; no exposure to vibrations, extreme cold, or workplace hazards, such as moving machinery and unprotected heights; she can do simple, routine, repetitive tasks with a reasoning level of 1-2, occasional superficial contact with the public, and occasional contact with coworkers with no teamwork or collaborative tasks." AR 26.

The ALJ found that plaintiff would not be able to perform her past work as a Customer Service Representative. AR 30. But the ALJ found (at step five) plaintiff would be able to perform occupations such as Routing Clerk, Marker, and Small Products Assembler. AR 31.

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of Social Security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874 F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). The Court must consider the administrative record as a whole. *Garrison v.*

*Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the evidence that supports and evidence that does not support the ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope of the Court's review. *Id.*

## DISCUSSION

**A. Medical evidence.**

Plaintiff argues the ALJ erred by failing to clarify the record in light of ambiguous medical evidence submitted by Dr. Christmas Covell and Dr. Rafael Oliveras. Dkt. 11, Plaintiff's Opening Brief, at 2-3. Plaintiff also argues the ALJ erred in evaluating the opinions of Dr. Jack Litman, Dr. David Morgan, and Dr. Howard Platter. Dkt. 11, at 3-8. Plaintiff also contends the ALJ's decision should be overturned because Dr. Bruce Tapper's opinion, which was provided to the Appeals Council after the ALJ published their decision, requires a new hearing. Dkt. 11, at 18-19.

Under the 2017 regulations, the Commissioner "will not defer or give any specific evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless explain with specificity how he or she considered the factors of supportability and consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b).

The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific

3

and legitimate reasons'[1] for rejecting a treating or examining doctor's opinion…is incompatible with the revised regulations" because requiring ALJ's to give a "more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources." *Id.* at 792. Under the new regulations,

> an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

*Id.*

1. Mental Health Evidence

- Dr. Litman

The ALJ found that Dr. Litman's assessment was unpersuasive because Dr. Litman opined that plaintiff would be unable to work – an issue the ALJ found was only for the Commissioner to decide, and thus the ALJ determined she could not consider Dr. Litman's entire assessment for any persuasive value. AR 30.

Dr. Litman found that plaintiff's symptoms would interfere with her ability to complete a regular workday. AR 592. During the examination (November 2019), Dr. Litman reviewed plaintiff's medical records and performed a mental status examination. AR 586-593. He found that plaintiff would be a disruption to others around her and she would not be able to complete a regular workday. AR 592. Dr. Litman observed that plaintiff was experiencing recurring anxiety, depression, and PTSD, as a result of having been subjected to sexual abuse by her father from the time she was about three years

---

[1] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

old until she was 15; she reported the abuse to her mother (plaintiff testified in court against her father and he was convicted); she experienced recurring symptoms – she had panic attacks, felt depressed, was agoraphobic, and was traumatized when people would yell at her over the phone when she worked as a customer service representative. AR 590-592. He noted that she was morbidly obese and weighed approximately 500 pounds. AR 590.

Dr. Litman's assessment is supported by evidence in the longitudinal record. AR 400-415 (mental health counseling and medical assessments starting in March 2018, showing that even with counseling and medications to treat her symptoms, plaintiff was unable to consistently attend work because she was anxious, had daily panic attacks, and would not be able to leave her bedroom except to obtain groceries or attend medical appointments); AR 510, 656, 673 (mental health treatment records showing the continuing symptoms during 2019, 2020, and 2021).

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id* at 1052, 1054; see also, *Carmickle v. Comm'r. Soc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). The ALJ's error, rejecting Dr. Litman's opinion without having a reason that was supported by substantial evidence in the record, was not harmless. Dr. Litman found that plaintiff's symptoms would interfere with her ability to complete a regular workday. The ALJ's decision to not evaluate the

persuasiveness of Dr. Litman's opinion, simply because Dr. Litman opined that plaintiff would be unable to work, was consequential and requires reversal.

- Dr. Morgan

With respect to the opinions of Dr. Morgan, the defense points out (Dkt. 13, at 5-8) that Dr. Morgan's opinion states the duration of plaintiff's symptoms, with available treatment, would be ten months. AR 496. The ALJ is responsible for resolving ambiguities in the medical record. *Tommasetti v. Astrue,* 533 F.3d 1035, 1041 (9th Cir. 2008). A statement that plaintiff's symptoms would be of 10-months duration with available treatment is somewhat ambiguous because the start date of the most serious symptoms is not identified by Dr. Morgan. The Court will not second-guess the ALJ's resolution of this ambiguity in Dr. Morgan's assessment and finds that the ALJ's rejection of Dr. Morgan's opinion should be upheld.

- Dr. Tapper

The opinion evidence of Dr. Bruce Tapper, submitted after the ALJ's decision was published, shows that Dr. Tapper evaluated plaintiff on October 11, 2021. AR 13-17. Dr. Tapper reviewed plaintiff's records, including Dr. Litman's 2019 assessment. AR 13. Dr. Tapper discusses plaintiff's mental health all the way back to her hospitalization for depression at age 16. For example, Dr. Tapper describes plaintiff's chief complaint: "[plaintiff] has experienced symptoms of Complex Posttraumatic Stress Disorder because of a long history of childhood sexual abuse perpetrated by her father. She was retraumatized by being the victim of stalking in 1998, plus her daughter having been sexually molested by [plaintiff's] father." AR 13.

In addition, Dr. Tapper observes: "[plaintiff] was triggered into severe PTSD symptoms in April 2018 when she saw a movie . . . and she has continued to experience unremitting symptoms of anxiety, panic, depression, and complete social avoidance and withdrawal." AR 13. The report continues: "[s]he is extremely anxious every day. . .. [R]arely leaves . . . except for scheduled appointments. . .. [Plaintiff] may even avoid going into the kitchen to make a meal because she may have panic attacks if she leaves the room, and her roommates are present. Her panic attacks range from twice per week to as often as twice per day. She is hypervigilant and is extremely aware of all of her surroundings." AR 15. And Dr. Tapper also states: "[s]he has become housebound from her agoraphobia." AR 16.

The Court may review new evidence presented first to the Appeals Council when determining whether "in light of the record as a whole, the ALJ's decision was supported by substantial evidence and was free of legal error." *Taylor v. Comm'r of SSA*, 659 F.3d 1228, 1232 (9th Cir. 2011) (*citing Ramirez v. Shalala*, 8 F.3d 1449, 1451–54 (9th Cir. 1993)). The Ninth Circuit did not require a finding that plaintiff had good cause for failing to produce the new evidence earlier. *See Ramirez*, 8 F.3d at 1451–54; *see also Taylor*, 659 F.3d at 1232.

The Ninth Circuit has held that "when a claimant submits evidence for the first time to the Appeals Council, which considers that evidence in denying review of the ALJ's decision, the new evidence is part of the administrative record, which the district court *must* consider in determining whether [or not] the Commissioner's decision is supported by substantial evidence." *Brewes v. Comm'r of SSA*, 682 F.3d 1157, 1159–60 (9th Cir. 2012) (emphasis added).

Plaintiff contends Dr. Tapper's report does change the nature of the medical evidence and has a significant bearing on whether substantial evidence supports the ALJ's decision. Dkt. 11 at 13-15. Defendant argues Dr. Tapper's assessment would not undermine the ALJ's decision, because Dr. Tapper opines on plaintiff's condition as of October 2021 and does not provide any opinion of whether she was experiencing work-related limitations prior to the date of the evaluation. Dkt. 13, at 18.

Defendant's argument is based on a misapprehension of the contents of Dr. Tapper's report. AR 13-17.

The record shows that Dr. Tapper is opining plaintiff's agoraphobia has been present in the past and has become even worse over time. And, Dr. Tapper opines that plaintiff has had PTSD symptoms including panic attacks over time, rather than suddenly experiencing them. Therefore, the Court finds the assessment of Dr. Tapper materially affects the Court's evaluation of whether substantial evidence supports the ALJ's decision, and reversal and remand for a new hearing is required. *Brewes v. Comm'r of Soc. Sec.,* 682 F.3d at 1160.

2. <u>Evidence Concerning Physical Impairments</u>

- Dr. Platter

Plaintiff argues the ALJ erred by failing to incorporate into the RFC Dr. Howard Platter's assessments of her physical symptoms and work-related limitations. Dkt. 11, Plaintiff's Opening Brief, at 16-18. Defendant states that plaintiff incorrectly interprets the record, and all the limitations stated by Dr. Platter are, in fact, included in the RFC. Dkt. 13, Defendant's Brief, at 14.

The RFC states limitations to plaintiff's ability to use arms, hands, and fingers, in relevant part – that plaintiff would be able to "occasionally reach overhead with the left upper extremity; frequently reach laterally and in front with the left upper extremity; frequently handle with the left upper extremity." AR 26. Dr. Platter's assessment of December 13, 2019 (AR 112) (found to be persuasive by the ALJ) states: "L shoulder capsulitis. Limited L OH reach to occasionally, limited L front/lateral reach to frequent d/t ROM reduced w/pain. Handling limited L side d/t reduced strength to frequent." The limitations are incorporated into the RFC, and therefore plaintiff's arguments on this point are not well-taken.

3. <u>Consideration of obesity</u>

Plaintiff also contends the ALJ did not fully consider limitations associated with the condition of obesity. Dkt. 11, at 14-15.

Despite the evidence that plaintiff was approximately six feet tall, weighed approximately 500 pounds, and was found to have a BMI of 60 or more (AR 424-427), the ALJ did not include any limitations on plaintiff's ability to walk, stand, sit, or move from a sitting to a standing position, or push and pull using lower extremities. AR 26. Nor did the ALJ make any mention of plaintiff's obesity and difficulty controlling her appetite or exercise, as being a symptom of depression (AR 423, depression screening notes, listing over-eating as a symptom of depression, and AR 421-424, listing severe obesity as part of an assessment by PA Cynthia Taucher, on 3-8-2018 and 3-22-2018). The ALJ must consider the limiting effects of plaintiff's obesity when assessing their RFC. Social Security Ruling 19-2p ("SSR 19-2p"), *Titles II and XVI: Evaluating Cases Involving Obesity*, 84 FR 22924-01, 2019 WL 2161798 (May 20, 2019). The combined

effects of obesity with other impairments may be greater than the effects of each of the impairments considered separately when the impairments effect weight-bearing joints causing more pain and functional limitations than the impairment alone. *Id*. "As with any other impairment, [the ALJ] will explain how [the Administration] reached our conclusion on whether obesity causes any limitations." *Id*.

In this case, the ALJ found plaintiff's obesity to be a severe impairment. In addressing plaintiff's obesity in the RFC, the ALJ stated that "the undersigned considers [plaintiff's] obesity . . .. singly and in combination with the other impairments. . .." AR 24. The RFC did not mention obesity as being connected with plaintiff's psychological or psychiatric symptoms or limitations; nor does the RFC contain limitations about walking, sitting, or standing. AR 26.

The ALJ considered plaintiff's testimony about the work-related limitations caused by her obesity. AR 27, 28-29. However, the ALJ found "treatment records did not document significant findings." AR 29. This statement is not sufficient pursuant to SSR 19-2p given the medical records and plaintiff's testimony in this case. *See* SSR 19-2p (stating that with obesity, a person may have limitations in any of the exertional functions of sitting, standing, walking, lifting, carrying, pushing, and pulling, and limitations in the non [-] exertional functions of climbing, balancing, stooping, kneeling, crouching, and crawling).

On remand, the Commissioner should take steps to clarify the ambiguity in the record – Dr. Rafael Oliveras, whose opinion (AR 80-83, August 29, 2019) described "obesity with BMI over 60", opined that plaintiff could stand or walk with normal breaks for a total of four hours, and could sit for about six hours in an 8-hour day. AR 81. He

also opined that plaintiff could frequently climb ramps or stairs, and could occasionally climb ladders, ropes, or scaffolds. AR 81. Yet he also stated, "medical evidence is insufficient to rate Physical Limitations prior to 01/01/2019." AR 82. The record was ambiguous and inadequate to allow for proper consideration of the evidence of plaintiff's obesity. *See, Garcia v. Commissioner,* 768 F.3d 925, 930 (9th Cir. 2014) (if there is ambiguity in the record about plaintiff's limitations, the ALJ has a special duty to develop the record and assure interests of the claimant are considered); *but see, Mayes v. Massanari,* 276 F.3d 453, 460 (9th Cir. 2001) (if record is not ambiguous, and is adequate for proper evaluation of evidence, then the ALJ does not have a duty to further develop the record). Plaintiff was not represented by an attorney during the administrative hearing, or during review by the Appeals Council. AR 388-395. The non-attorney representative, Ms. Sexton, identified obesity as being related to plaintiff's mental health conditions (AR 391).

Given plaintiff's mental health impairments, the facts concerning plaintiff's obesity, and ambiguity in the medical opinion evidence concerning plaintiff's physical impairments that was provided by Dr. Oliveras, the ALJ should have clarified the record by asking more questions of plaintiff during the hearing, and by supplementing the record with a consultive expert whose medical expertise would include the treatment of the psychological and psychiatric aspects, and physical aspects, of morbid obesity, to follow the guidance of SSR 19-2p, *Titles II and XVI: Evaluating Cases Involving Obesity*, 84 FR 22924-01, 2019 WL 2374244 (May 20, 2019).  Under SSR 19-2p, the Social Security Administration recognizes that obesity is a condition that increases the risk of developing impairments including mental health impairments such as depression. *Id.*

Plaintiff's obesity, in combination with other impairments, should be considered under SSR 19-2p because a person who has a medically determinable obesity condition "may have limitations in the ability to sustain a function over time" and the Commissioner considers "all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments." SSR 19-2p, 2019 WL 2374244, at *4.

An error that is inconsequential to the non-disability determination is harmless. *Stout v. v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). If the errors of the ALJ result in a residual functional capacity (RFC) that does not include relevant work-related limitations, the RFC is deficient, and the error is not harmless. *Id* at 1052, 1054; *see also, Carmickle v. Comm'r. Spc. Sec. Admin.,* 533 F.3d 1155, 1160 (9th Cir. 2008); *Embrey v. Bowen,* 849 F.2d 418, 422-423 (9th Cir. 1988); *Stramol-Spirz v. Saul,* 848 Fed. Appx. 715, 718 (9th Cir. 2021) (unpublished). In plaintiff's situation, the ALJ's error with respect to consideration of morbid obesity, was not harmless.

The RFC contains a few limitations that could potentially be related to obesity – that plaintiff would be able to "frequently climb ramps and stairs, but never climb ropes, ladders, or scaffolds; occasionally balance, stoop, crouch, and kneel, but never crawl"; yet there are no limitations concerning standing, walking, going from a seated position to a standing position, or being able to push or pull with lower extremities. Nor does the ALJ's decision or RFC address morbid obesity in the context of plaintiff's mental health conditions.

In this situation, plaintiff's condition would qualify as more than "somewhat obese." *Compare, Burch v. Barnhart,* 400 F.3d 676, 684 (9th Cir. 2005) (affirming the

ALJ's decision that considered obesity, and included relevant limitations in the RFC where plaintiff weighed 222 pounds, and medical records showed that being "somewhat obese" likely contributed to back pain), with Austin v. Saul, 2020 WL 4336071 at *22, *35 (distinguishing Burch and reversing the decision of the ALJ where plaintiff weighed more than 300 pounds with a BMI of approximately 55, and medical record documented the diagnosis and impairments associated with morbid obesity). As the Court stated in Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003), "[t]he ALJ was responsible for determining the effect of [plaintiff's] obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments." In the Celaya case, the Ninth Circuit found reversible error when the ALJ did not evaluate plaintiff's obesity at all; in this case, the ALJ considered plaintiff's obesity but failed to adequately consider obesity at each step of the process, and did not develop the record to determine the impact of her obesity on her other conditions, and as a condition on its own, with respect to work-related limitations.

**B. Plaintiff's statements regarding subjective symptoms; lay witness evidence; additional issues**

Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not incorporating fully plaintiff's subjective claims; and plaintiff challenges the ALJ's assessment of lay witness evidence; plaintiff also raises additional issues. However, the Court already has concluded that the ALJ committed harmful error and the medical evidence should be reviewed anew, see supra, Sections II A (1), (2), above. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. See 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility, lay witness

evidence, and the additional issues raised by plaintiff, should be assessed anew on remand.

CONCLUSION

Based on a review of the record, the Court concludes that the record is not free from important and relevant conflicts, such as conflicts in the medical evidence. The Commissioner is directed to hold a *de novo* hearing and allow plaintiff to present additional evidence. The Commissioner shall re-evaluate the medical evidence from Dr. Litman, and consider the evidence from Dr. Tapper. The Commissioner shall re-evaluate the five step process, consider anew any testimony from plaintiff and any lay witness evidence, and, to clarify the evidence on remand, consider evidence concerning obesity. The Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further administrative proceedings.

Dated this 18th day of October, 2023.

*Theresa L. Fricke*
Theresa L. Fricke
United States Magistrate Judge